UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-5221-DMG (KSx)** | | Date | October 22, 2021 |
|---|---|---|---|---|

| Title | ***James Colmenares v. Paedae, Inc., et al.*** | Page | 1 of 7 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

Proceedings:  **IN CHAMBERS—ORDER RE PLAINTIFF JAMES COLMENARES'
MOTION TO REMAND [13]**

**I.
INTRODUCTION**

On June 21, 2021, Plaintiff James Colmenares filed a Complaint in the Los Angeles
County Superior Court against Defendant PaeDae, Inc.  On June 25, 2021, Defendant removed
the action to this Court, asserting diversity jurisdiction under 28 U.S.C. section 1332.  Notice of
Removal ("NOR") [Doc. # 1.]  Defendant asserted that the parties are diverse because Plaintiff is
a citizen of New York and Defendant is a citizen of Delaware, where it is incorporated, and
Ohio, where it has its principal place of business.  NOR ¶ 4.

On July 20, 2021, Plaintiff filed a motion to remand ("MTR"), arguing that the parties are
not diverse because Defendant's principal place of business is actually in Los Angeles, not Ohio.
[Doc. # 13.]  Plaintiff based his motion in part on a "Statement of Information" that Defendant
filed with the California Secretary of State, dated March 31, 2020, in which it indicated its
principal office as being in Los Angeles, and its principal officers being located in that office.
*See* MTR at 23; Kent Decl., Ex. 2 [Doc. # 13 at 74].[1]  Plaintiff also pointed out that Defendant
had asserted its principal place of business as being in Los Angeles in a November 8, 2019 filing
in an underlying arbitration between the parties.  *See* MTR at 23-24; First Kent Decl., Ex. 6
[Doc. # 13 at 85].  Plaintiff further argued based on his own personal knowledge from having
worked for Defendant from January 4, 2016 to January 31, 2019 that Defendant's principal place
of business is in Los Angeles.  *See* First Colmenares Decl. ¶ 4 [Doc. # 13 at 38].

Defendant filed an Opposition on July 30, 2021, in which it conceded that its principal
place of business was in Los Angeles as recently as August 2020, but that around that time it
began transitioning its executive functions to its Granville, Ohio office.  [Doc. # 19 at 5.]  It

---

[1] All page references herein are to the page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-5221-DMG (KSx)** | | Date | October 22, 2021 |
|---|---|---|---|---|

| Title | *James Colmenares v. Paedae, Inc., et al.* | | Page | 2 of 7 |
|---|---|---|---|---|

supported this contention with descriptions of various officers' executive functions and their locations. *See generally id.* Plaintiff then filed a Reply, in which he called into question the factual characterizations of many of Defendant's purported officers and their locations. [Doc. # 23.]

Due to these factual disputes, on August 13, 2021, the Court granted Plaintiff leave to conduct jurisdictional discovery into the location of Defendant's principal place of business and continued the hearing on the MTR from August 20, 2021 to October 22, 2021. [Doc. # 29.] On October 8, following the close of jurisdictional discovery, Plaintiff filed a supplemental brief in support of his MTR. [Doc. # 31 ("Supp. Br.").] Defendant filed a supplemental opposition on October 15. [Doc. # 32 ("Supp. Opp.").]

The MTR is now before the Court. For the reasons stated below, the MTR is **DENIED**.

## II.
## LEGAL STANDARD

To establish diversity jurisdiction, there must be "complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)). "The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)). Accordingly, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

For diversity purposes, a corporation is deemed to be a citizen of both the state in which it has been incorporated and the state where it has its principal place of business. *Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (citing 28 U.S.C. § 1332(c)). A corporation's principal place of business is its "nerve center" wherein its "officers direct, control, and coordinate the corporation's activities." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Diversity is determined by the citizenship of the parties at the time the complaint was filed. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-5221-DMG (KSx) | | Date | October 22, 2021 |
|---|---|---|---|---|

| Title | *James Colmenares v. Paedae, Inc., et al.* | | Page | 3 of 7 |
|---|---|---|---|---|

**III.**
**DISCUSSION**

  The parties' briefs raise a number of different issues.  The Court discusses some of the main ones herein.

**A.**  **Documentation of Defendant's Address**

  Plaintiff makes much ado about documents from 2020 and prior in which Defendant represented its Los Angeles office as its primary address, and the lack of documentation evidencing a move to Granville, Ohio.  The most prominent example is Defendant's Secretary of State filings—as of the date of Plaintiff's Supplemental Brief, Defendant's filings with the California Secretary of State still reflected a Los Angeles address for its principal office, and Defendant had not filed any documents with the Ohio Secretary of State.  *See* Second Kent Decl., Ex. 7 [Doc. # 31-7 at 5-6] (discovery responses indicating that no Secretary of State filings exist with either California or Ohio that relate to Defendant having its principal place of business in Ohio).  On October 11 and 12, 2021, just days before filing its Supplemental Opposition, Defendant finally filed updated documents reflecting its principal office located in Granville, Ohio.  Second Petersen Decl. ¶ 2, Ex. 30-31 [Doc. # 32-4].[2]

  The timing of Defendant's updated filings is clearly self-serving.  Yet, the fact that Defendant failed to update these records earlier is not dispositive, or indeed even all that probative.  That is because the nerve center test is an objective inquiry, centering on the corporation's "place of actual direction, control, and coordination," not on where the corporation might represent its principal office to be in public statements.  *Hertz*, 559 U.S. at 97 ("[W]e reject suggestions such as . . . that the mere filing of a form . . . listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.' Such possibilities would readily permit jurisdictional manipulation, thereby subverting a major reason for the insertion of the 'principal place of business' language in the diversity statute.") (citations omitted); *see also L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 940 (C.D. Cal. 2011) ("California district courts have found that reliance on a single piece of evidence, such as a Secretary of State printout, is insufficient for a party to prove the location of its headquarters under the nerve center test.").

  For the same reason, the lack of any internal documentation of a planned relocation of Defendant's principal place of business is not dispositive.  "Principal place of business" is a legal

---

[2] Similarly, on October 15—the *same day* Defendant filed its Supplemental Opposition—Defendant filed its 2020 tax returns, which refer to its address as in Granville, Ohio.  Second Emrich Decl., Ex. 5-23 [Doc. # 32-2].

   **CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-5221-DMG (KSx) | Date | October 22, 2021 |
|---|---|---|---|

| Title | *James Colmenares v. Paedae, Inc., et al.* | Page | 4 of 7 |
|---|---|---|---|

construct, not a corporate formality. It can shift without any kind of official action or proactive decision, so long as the "place of actual direction, control, and coordination" changes. That place is where "officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 at 92-93. It is the officers' conduct, not their representations or subjective intentions, that determines where the nerve center is.[3]

## B.     Defendant's Principal Officers

That leads to the most important issue, which is who Defendant's principal officers are and where they work. In its original Opposition, Defendant maintained that it had nine high-ranking officers, three of whom live in Ohio and work out of the Granville office. First Petersen Decl. ¶ 8 [Doc. # 19-8]; *see also* Second Petersen Decl. ¶ 3. By contrast, only two officers work in California, and only one in the Los Angeles office. *Id.*[4] In his Reply, Plaintiff called into question many of Defendant's characterizations of these officers and where they work. He argued that one Ohio-based employee named by Defendant should not be considered a high-ranking officer, the Florida-based chairman of the company actually spends a substantial portion of his time in California, and two other California-based employees not named by Defendant should be considered high-ranking officers. Reply at 17-22. Plaintiff's assertions were thinly supported and largely based on conjecture, but because Plaintiff did have some personal knowledge of the inner workings of the company (albeit from before the relevant time period) and because doubts as to removability should be construed against the removing party, the Court allowed Plaintiff to conduct jurisdictional discovery to marshal more evidence to support his contentions. Despite that opportunity, Plaintiff has failed to provide any additional evidence to support his theories.

First, Plaintiff argues that Defendant's Granville, Ohio-based controller, Angela Birkemeier, is not a high-level officer. He bases that opinion solely on his experience at the company, from 2016 until early 2019, when Birkemeier was not actually the controller. Plaintiff avers that the controller "is a middle level accounting employee reporting to the Chief Financial Officer for back-office finance administration, not strategic finance." Third Colmenares Decl. ¶ 7 [Doc. # 31-1]. In contrast, Defendant's CFO, Robert Adams, attests that while Birkemeier does report to him, she also reports directly to the chairman and the CEO and that he considers her to be a peer among the senior leadership. Second Adams Decl. ¶ 5 [Doc. # 32-1].

---

[3] That said, it is worth noting that as of January 23, 2021, Defendant's website still listed its "Office Address" as its Granville, Ohio address. Organ Decl. ¶ 2, Ex. 1 [Doc. # 28-1]; Second Emrich Decl. ¶ 3.

[4] Two others work from home in Minnesota, and the other two work in New York and Florida, respectively. Second Petersen Decl. ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-5221-DMG (KSx)** | Date | October 22, 2021 |
|---|---|---|---|

| Title | *James Colmenares v. Paedae, Inc., et al.* | Page | 5 of 7 |
|---|---|---|---|

Birkemeier attends and presents at board meetings, participates in leadership calls, is consulted on decisions that have a fiscal impact on the company, retains and oversees outside tax and audit firms, manages the company's cash flow, leads the finance and accounting teams, and has check writing authority. *Id.* at ¶¶ 6-8, 11-12. In April 2011, the company hired an Assistant Controller (in Ohio) beneath Birkemeier to take over some of her day-to-day responsibilities and allow Birkemeier to focus on more strategic functions—which could explain the discrepancy between Plaintiff's view of the controller position and Defendant's. *Id.* at ¶ 9. Plaintiff has no evidence to rebut this testimony about Birkemeier's high-ranking status, even after jurisdictional discovery. *Compare* Second Colmenares Decl. ¶ 6 [Doc. # 23-2] *with* Third Colmenares Decl. ¶ 7 (repeating same blanket assertion that the controller is "a middle level accounting executive . . . for back-office administration" both before and after discovery).

Second, Plaintiff maintains that Defendant's Chief Technology Officer ("CTO"), Vigen Amirkhanyan, and Head of Corporate Development, Aarin Yu—both based in California—should be considered high-ranking officers. He insists that "given the critical role of technology" for the company, the CTO must be considered a high-level executive position. Third Colmenares Decl. ¶ 9. He also contends that Yu should be considered high-level based on the duties described in his LinkedIn profile and the fact that he is listed among four members of Defendant's "Leadership Team" on its website. *Id.* at ¶ 10. Again, the evidence (or lack thereof) in support of these positions does not change from before to after jurisdictional discovery. *Compare* Second Colmenares Decl. ¶¶ 25-27 *with* Third Colmenares Decl. ¶¶ 9-10. By contrast, Yu himself attests that his role is limited to evaluating potential acquisition targets for the company and that he does not have decision-making authority in this regard, is not authorized to negotiate on behalf of or bind the company in contracts, and had only one direct report in June 2021 (and zero at the time of his declaration). Yu Decl. ¶¶ 3-6 [Doc. # 32-6]. As for Amirkhanyan, Defendant offers testimony stating that he is CTO only of a specific product line, not of the whole company, and that he reports to the President of the Location Platform (who in turn reports to the CEO) and is not involved in high-level strategic or executive decisions. Second Petersen Decl. ¶¶ 4-5. As of September 1, 2021, his title was no longer CTO, but rather SVP of Engineering. *Id.* at ¶ 6.

Third, in his Reply, Plaintiff acknowledged that the company's chairman, Robert Emrich, had moved from California to Florida in June 2019, but pointed out that Emrich's LinkedIn profile stated his location as the Los Angeles area and that his personal assistant still works in Los Angeles, and speculated that a substantial portion of his work schedule still takes place in Los Angeles. Second Colmenares Decl. ¶¶ 15-16, 18. Emrich has directly refuted all of those contentions, stating that the assistant Plaintiff identified no longer works for him and that his current assistant works with him in Florida, he does not maintain an office in Los Angeles, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-5221-DMG (KSx)** | | Date | October 22, 2021 |
|---|---|---|---|---|

| Title | *James Colmenares v. Paedae, Inc., et al.* | | Page | 6 of 7 |
|---|---|---|---|---|

he spent only seven work days in California in the first half of 2021, compared to five in Ohio and the remainder in Florida.  Second Emrich Decl. ¶¶ 24-26 [Doc. # 32-2].

Finally, Plaintiff does not controvert the primary facts that Defendant relies on for its assertion that its principal place of business moved to Granville, Ohio in 2020:  two key executives were newly hired in or relocated to Ohio around that time.  Raphael Nicolosi, who lives and works in Granville, was hired as President of Media in August 2020.  Nicolosi Decl. ¶¶ 2-3 [Doc. # 19-6].  In that position, over 80% of the company's employees report directly to Nicolosi, who also serves on the board of directors.  *Id.* at ¶¶ 4-5.  In November 2020, Matthew Russo, the company's Chief Operations Officer and Chief Marketing Officer, moved to Ohio and has worked from the Granville office since then.  Russo Decl. ¶¶ 2, 4, 7 [Doc. # 19-9].  Both Nicolosi and Russo have authority with respect to budgeting, check writing, hiring and firing, and signing contracts.  *See* Second Emrich Decl, Ex. 24.  Meanwhile, only one high-level officer worked in Los Angeles in June 2021—the Chief Product Officer, Marcos Escalante.  Second Petersen Decl. ¶ 3.  Another officer—the General Counsel, Keith Petersen—lives in California, where he works from home in San Diego.[5]  *Id.*

To be sure, this is not an easy case.  Defendant's *highest*-ranking officers—its chairman, CEO, and CFO—all work in neither Ohio nor California.  *Id.*  Only three of nine officers work in Granville, Ohio; the majority work elsewhere.  *Id.*  The Supreme Court recognized that there would be "hard cases" such as this one, where "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet."  *Hertz*, 559 U.S. at 95-96.  This difficulty is surely even more compounded in the post-COVID-19 era, when substantially more employees telecommute.  Still, every corporation has a principal place of business, and has only one of them.  *See id.* at 93.  Defendant's Granville, Ohio office is home to a plurality of its officers with strategic, decision-making, and financial authority, and is the only single place home to more than one of them.  A substantial majority of the company's employees report to the officers in Granville.  Therefore, to the extent that Defendant had any single "place of actual direction, control, and coordination" in June 2021, it must be the Granville, Ohio office—and not Los Angeles, California.  Accordingly, Defendant is a citizen of Ohio and not California, and the parties are diverse.

---

[5] A "nerve center" is a single place within a state, not the state itself.  *Hertz*, 559 U.S. at 93.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-5221-DMG (KSx)** | Date | October 22, 2021 |
|---|---|---|---|

| Title | ***James Colmenares v. Paedae, Inc., et al.*** | Page | 7 of 7 |
|---|---|---|---|

**IV.**
**CONCLUSION**

In light of the foregoing, Plaintiff's MTR is **DENIED**.

**IT IS SO ORDERED**.